UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| MIRANDA BURTON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:26-CV-27-REW |
| | ) | |
| v. | ) | |
| | ) | OPINION & ORDER |
| FRANK BISIGNANO, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

Plaintiff Miranda Burton, through counsel, appeals the denial of her application for a period of Social Security Disability Insurance Benefits ("DIB").[1]  *See* DE 1.  Burton asks the Court to reverse the Commissioner of Social Security's decision and award her DIB, or, in the alternative, to remand this matter to the Social Security Administration ("SSA") for a new hearing.  *See id.*  Burton has also filed a motion for summary judgment, asserting that she is entitled to prevail on her claims as a matter of law.  *See* DE 7.  The Commissioner filed a response in opposition.  *See* DE 9.  Finding that the Commissioner's denial of DIB was in accordance with the law and based on substantial evidence, the Court DENIES Burton's requests for relief, *see* DE 1, and her motion for summary judgment, *see* DE 7.  The Court affirms the Agency's decision.

I.    **BACKGROUND**

Burton alleges that she has been disabled since at least 2020 and qualifies for a finding of disability and resulting benefits.  *See* DE 5 at 91–98.  After filing an initial application with the

---

[1] Burton originally named Leland Dudek, the former acting Commissioner of Social Security, as the sole defendant in this matter.  *See* DE 1.  However, because Frank Bisignano has since been confirmed as the Commissioner of Social Security, the Court automatically substitutes Bisignano as the sole defendant pursuant to Federal Rule of Civil Procedure 25(d).

SSA, Burton's claim was denied. *See id.* at 127–32. Upon reconsideration, her claim was once again denied. *See id.* at 133–38. Burton then submitted a written request for a hearing before an administrative law judge ("ALJ"). *See id.* at 139–41. At that hearing, Burton was represented by counsel and appeared via telephone from Harlan, Kentucky. *See id.* at 59–89.

Judge Boyce Crocker, the ALJ who oversaw Burton's hearing, denied her claim after finding that she was not disabled and thus was not entitled to DIB. *See id.* at 13–35. Judge Crocker, following the prescribed five-step process, acknowledged that Burton was not engaged in substantial gainful activity, *see id.* at 18, and found that she suffered from severe impairments, including "chronic obstructive pulmonary disease and/or emphysema due to Alpha-1 antitrypsin deficiency; tachycardia; and anxiety," *see id.* at 18–19. However, he also determined that those impairments did not meet or equal one of the listed impairments contained in Appendix 1 to Subpart P of Part 404. *See id.* at 19–21. He then found that Burton retained "the residual functional capacity to perform [a reduced range of] light work." *See id.* at 21–29. And although Burton was unable to perform any past relevant work, *see id.* at 29, Judge Crocker ultimately concluded that "jobs . . . exist in significant numbers in the national economy that [Burton] can perform," *see id.* at 30–31. As a result, Burton was neither disabled nor entitled to DIB under 20 C.F.R. § 404.1520. *See id.* at 30–31.

In rendering his decision, Judge Crocker assessed and/or relied on medical opinions from a range of professionals, including: Mahmood Alam, M.D. (treating pulmonologist); Geraldo Lima, Ph.D. (psychological consultative examiner); Robert Culbertson, M.D. (state agency medical consultant); Gregory McCormack, M.D. (state agency medical consultant); Eric Weiner, Ph.D. (state agency psychological consultant); and Alexis Guerrero, M.D. (state agency psychiatric consultant). *See id.* at 26–28. While Judge Crocker considered Dr. Alam and Dr.

Lima's opinions on the extent and severity of Burton's impairments, he was more persuaded by the views of Dr. Culbertson, Dr. McCormack, Dr. Weiner, and Dr. Guerrero. He based the denial of Burton's application for DIB, in large part, on their conclusions in light of the full record. *See id.*

Following Judge Crocker's decision, Burton requested review by the Appeals Council. *See id.* at 8–12. The Appeals Council subsequently denied Burton's request. *See id.* at 1–7. Having exhausted her administrative remedies, Burton filed the instant Complaint. *See* DE 1. In her Complaint, Burton asks the Court to reverse Judge Crocker's decision and grant her DIB. *See id.* Alternatively, she asks the Court to remand this matter to the SSA for a new hearing that considers the relevant evidence in full. *See id.* Burton has also filed a motion for summary judgment, essentially arguing these same points. *See generally* DE 7-1. The Commissioner has filed a response in opposition to Burton's Complaint. *See* DE 9. The matter is now ripe for the Court's decision.

## II. LEGAL STANDARD

### A. ALJ Evaluation

The SSA has established a five-step, sequential inquiry for ALJs to trace when determining whether a claimant is disabled. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); 20 C.F.R. § 404.1520(a)(4). First, the ALJ considers whether the claimant is engaged in substantial gainful activity, defined as work that involves significant physical or mental activities and is usually done for pay or profit. *See Heston*, 245 F.3d at 534; 20 C.F.R. § 404.1520(a)(4)(i). Second, the ALJ determines whether any of the claimant's impairments are properly classified as severe. *See Heston*, 245 F.3d at 534; 20 C.F.R. § 404.1520(a)(4)(ii). Third, the ALJ analyzes whether the claimant's impairments, individually or in combination, meet or equal one of the

impairments listed in Appendix 1 to Subpart P of Part 404—if they do, then the ALJ will determine that the claimant is disabled. *See Heston*, 245 F.3d at 534; 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, the ALJ identifies the claimant's residual functional capacity and considers whether she can perform her past relevant work. *See Heston*, 245 F.3d at 534; 20 C.F.R. § 404.1520(a)(4)(iv). This inquiry focuses on the type of work the claimant previously held, not her exact position. *See Studaway v. Sec'y of Health & Hum. Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987). Finally, the ALJ determines whether a significant number of jobs exist in the national economy that the claimant can yet perform, given her residual functional capacity. *See Heston*, 245 F.3d at 534; 20 C.F.R. § 404.1520(a)(4)(v). At this fifth step, the Commissioner bears the burden of production. *See Heston*, 245 F.3d at 534; 20 C.F.R. § 404.1520(a)(4)(v). If, at any step, the ALJ can conclusively determine that the claimant is or is not disabled, the analysis ends. *See* 20 C.F.R. § 404.1520(a)(4).

In evaluating an application for DIB, ALJs do "not defer or give any specific evidentiary weight" to any particular source's medical opinions or to any single prior administrative medical finding.[2] *Id.* § 404.1520c(a). Rather, ALJs consider and articulate the persuasiveness of each opinion individually, relying on considerations like supportability, consistency, relationship with the claimant, specialization, and other factors "that tend to support or contradict a medical opinion or prior administrative medical finding." *Id.* § 404.1520c(c)(1)–(5). Of these factors, supportability and consistency are most important—ALJs must "explain how [they] considered the supportability and consistency factors . . . in [their] determination or decision." *Id.*

---

[2] Previously, the SSA distinguished between treating sources, non-treating but examining sources, and non-treating and non-examining sources, providing different default weights to each. *See* 20 C.F.R. § 404.1527(c)(1)–(2). However, claims filed on or after March 27, 2017, are controlled by § 404.1520c rather than § 404.1527, the former of which has done away with these distinctions in favor of the framework discussed above. Burton's claim was filed in 2020. *See* DE 5 at 127–32.

§ 404.1520c(b)(2).  Supportability depends on the extent to which "the objective medical evidence and supporting explanations presented by a medical source" support a medical opinion, *id.* § 404.1520c(c)(1), while consistency pertains to whether the medical opinion is in line "with the evidence from other medical sources and nonmedical sources," *id.* § 404.1520c(c)(2).  ALJs may, but typically need not, articulate how the other factors influenced their decision or determination. *Id.*  The sole exception is when "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record," the ALJ must "articulate how [he] considered the other most persuasive factors . . . for those medical opinions or prior administrative medical findings in your determination or decision." *Id.* § 404.1520c(b)(3).

### B.  Judicial Review

When reviewing an ALJ's decision to deny DIB, a district court may only consider "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405–06 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  This is a limited inquiry.  *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971)).

An "ALJ's legal rulings, including his interpretation of relevant laws and regulations," are reviewed de novo.  *Linden v. Comm'r of Soc. Sec.*, 131 F.4th 531, 534 (6th Cir. 2025) (citing *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018)).  However, an ALJ's interpretations of language "contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law . . . are 'entitled to respect,' . . . but only to the extent

that those interpretations have the 'power to persuade.'" *Christensen v. Harris Cnty.*, 120 S. Ct. 1655, 1662–63 (2000) (internal citations omitted) (quoting *Skidmore v. Swift & Co.*, 65 S. Ct. 161, 164 (1944)). While social security rulings are "agency rulings published under the authority of the Commissioner of Social Security," and are thus "binding on all components of the [SSA]," they are only persuasive to the Court. *Sullivan v. Zebley*, 110 S. Ct. 885, 891 n.9 (1990) (internal quotation omitted) (citing *Heckler v. Edwards*, 104 S. Ct. 1532, 1534, n.3 (1984)).[3]

In contrast, as to factual assessments, when there is at least "substantial evidence to support [an] ALJ's factual finding, that ruling is conclusive." *Linden*, 131 F.4th at 534 (citing 42 U.S.C. § 405(g)). This is not a high threshold. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence means "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kirk v. Sec'y of Health & Hum. Servs.*, 667 F.2d 524, 535 (6th Cir. 1989)); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

Given the generous substantial evidence standard, the Court will not try this case de novo, resolve conflicts in the evidence, or revisit questions of credibility. *See Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Nor will the Court reverse the ALJ's determination merely because the record contains evidence—even substantial evidence—to support a different conclusion. *Warner*, 375 F.3d at 390. Rather, the Court will affirm if substantial evidence supports the ALJ's

---

[3] Notably, *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2273 (2024), expressly overruled *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 104 S. Ct. 2778, 2781–83 (1984), which required courts to give deference to an agency's reasonable interpretations of ambiguous provisions contained in the statutes that the agency administers. However, the decision did nothing to alter the basic principle of *Skidmore* respect that applies to an agency's reasonable interpretations of its own policy statements, agency manuals, and enforcement guidelines. *See Loper Bright Enters.*, 144 S. Ct. at 2259 (citing *Skidmore*, 65 S. Ct. at 164).

decision, if one reached under proper standards, even if the Court might have decided the case differently standing in a primary decision.  *See Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 648 (6th Cir. 2011); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).

### III.  ANALYSIS

#### A.  Exhaustion

A claimant may obtain judicial review of a decision on her application for DIB by filing "a civil action . . . within [60] days after the mailing to h[er] of notice of such decision . . . in the district court of the United States for the judicial district in which the plaintiff resides."  42 U.S.C. § 405(g).  However, the claimant must first exhaust her administrative remedies by applying for an initial determination, seeking reconsideration, requesting a hearing before an ALJ, and asking for Appeals Council review.  *See* 20 C.F.R. § 404.900(a)(1)–(5).  Burton filed a timely action in the Eastern District of Kentucky, the judicial district in which she resides.  Additionally, she has exhausted her administrative remedies by applying for an initial determination, seeking reconsideration, requesting a hearing before an ALJ, and asking for Appeals Council review. Having satisfied the procedural prerequisites to judicial review, and with no exhaustion issue raised by SSA, the Court proceeds to the merits of Burton's appeal—specifically, to whether Judge Crocker's treatment of Dr. Alam and Dr. Lima's opinions complied with relevant law and was based on substantial evidence.

#### B.  Consideration of Medical Evidence

Judge Crocker determined that Burton was not disabled, finding that she possessed the age, education, work experience, and residual functional capacity necessary to perform a significant number of jobs in the national economy (e.g., routing clerk, office helper, circuit board inspectors, final assembler).  *See* DE 5 at 30–31.  Burton challenges this conclusion, arguing in her motion

that Judge Crocker's "hearing decision [did] not contain an adequate evaluation of the medical sources in this claim and . . . the substantial medical records establishing her clearly severe impairments."[4] DE 7-1 at 9–10.

The thrust of Burton's appeal is that Judge Crocker failed to adequately evaluate two opinions. Specifically, Burton contends that Judge Crocker overlooked Dr. Alam's assessment of her ability to perform work-related activities. *See id.* at 11–12 (citing DE 5 at 635–37). She further asserts that Judge Crocker failed to adequately address Dr. Lima's finding that she had "marked limitations" in her ability to concentrate and complete tasks in a normal amount of time and moderate limitations in her ability to cope with the pressures and stressors found in a "typical work setting." *See id.* at 8, 12 (quoting DE 5 at 386). Here, the Court's review is limited to "whether the ALJ's finding[s] are supported by substantial evidence and whether the ALJ applied the correct legal standards," including consideration of the proper factors. *See Gwendolyn F.H. v. Comm'r of Soc. Sec.*, No. 3:22-CV-214, 2023 WL 5772796, at *2 (N.D. Ohio Sept. 7, 2023) (citing *Blakley*, 581 F.3d at 406; *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745–46 (6th Cir. 2007)).

### 1.   Physical Limitations and Dr. Mahmood Alam's Opinion

Judge Crocker properly considered all evidence of Burton's physical condition and limitations, including Dr. Alam's medical opinion. The parties agree that Dr. Alam maintained an ongoing treatment relationship with Burton consistent with accepted medical practice. *See* DE 7-1 at 3; DE 9 at 4. However, contrary to what Burton implies in her motion, ALJs are no longer required to accord special deference or "controlling weight" to a treating physician's opinion. *See* 20 C.F.R. § 404.1520c(a). Instead, all medical opinions are evaluated for their overall

---

[4] Of course, Judge Crocker *did* determine that Burton suffered from severe impairments. *See* DE 5 at 18–19. But the Court takes Burton's disagreement to be with Judge Crocker's assessment of her residual functional capacity. That is, it takes Burton to contend that her impairments, severe and otherwise, prevent even a reduced range of light work.

persuasiveness, with supportability and consistency being the two most important factors that must be explicitly discussed. *See id.* § 404.1520c(b)(2); *see also Sallaz v. Comm'r of Soc. Sec.*, No. 23-3825, 2024 WL 2955645, at *5 (6th Cir. June 12, 2024).

Here, Judge Crocker reasonably determined that Dr. Alam's opinion was relatively unpersuasive based on deficiencies in both supportability and consistency. Judge Crocker first noted that Dr. Alam's proffered opinion, which suggested that Burton was significantly limited in her abilities, was not supported by his treatment notes, *see* DE 5 at 28, which themselves suggested that she was stable and had responded positively to treatment. *See, e.g., id.* at 394–97 (noting "dyspnea has stabilized" and was "adequately relieved by rescue inhalers"). He further explained that Dr. Alam's assessment was inconsistent with the objective cardiology records from Burton's recent exercise stress tests indicating that she "had no significant arrhythmias" and "[h]as been doing well." *See id.* at 28, 463. At minimum, the Court sees substantial evidence in support of Judge Crocker's conclusion, particularly given Dr. Alam's unambiguous treatment notes indicating that Burton was "doing well" in response to treatment with "no reported side effects." *Id.* at 399.

Burton is correct in asserting that this was a relatively limited inquiry. But Judge Crocker still identified unsupported conclusions and record inconsistencies and adequately explained why those undermined Dr. Alam's opinion. That satisfies his duties and, in turn, satisfies the Court's limited standard of review. *See, e.g., Sallaz*, 2024 WL 2955645, at *5–7 (affirming an ALJ's decision not to credit a medical opinion because of the opinion's inconsistencies with the overall record and a basic factual finding that the opinion was not credible); *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 850–51 (6th Cir. 2020) (affirming an ALJ's decision to discount a treating physician's opinion because the petitioner's "medical records show that he responded positively

9

to medical intervention, [and] that his physical exams were mostly normal"). The ALJ compared Dr. Alam's opined extreme limits against the support in Alam's own treatment notes and the objective cardiac testing (like the June 2023 stress test) and found his limits overstated. This was a reasonable take regarding the record.

Likewise, Judge Crocker adequately explained the weight that he *did* accord Dr. Alam's opinion. For example, while he credited Dr. Alam's "observations that the claimant would have exertional and environmental limitations to prevent exacerbating her emphysema," he also found that the record as a whole suggested Burton retains the ability to perform a reduced range of light work. DE 5 at 28. The Court finds that Judge Crocker's conclusion was supported by substantial evidence, particularly given Burton's "[p]rimary care records . . . show[ing] normal heart and respiratory findings" and her provider notes indicating that her "symptoms were primarily exacerbated by moderate activity." *See id.* at 24. For the most part, Judge Crocker relied on Dr. Culbertson's and Dr. McCormack's independent but consistent opinions, noting that they were at least "partially persuasive." *See id.* at 27. Although Judge Crocker largely agreed with their assessments of Burton's ability to complete "light work with postural and environmental limitations," he believed that the more thorough longitudinal record supported a finding that Burton requires tailored accommodations and can only complete a reduced range of light work. *See id.* This conclusion is likewise supported by substantial evidence, particularly given Burton's consistent reports of "daily episodes of dyspnea to pulmonology providers that occurred with anxiety, stress, and bending forward." *See id.* at 24; *see also Emard*, 953 F.3d at 849–51.

Judge Crocker's analysis properly reflects the regulatory methodology contemplated by § 404.1520c. He did not defer to any opinion by nature of its source, instead evaluating each medical opinion for supportability and consistency and resolving conflicts based on the whole

evidentiary record. *See* DE 5 at 26–29. His rational determination as to Burton's residual functional capacity was grounded in substantial evidence and accompanied by a sufficiently articulated explanation. That alone satisfies the minimal governing standard.

### 2. Mental Limitations and Dr. Geraldo Lima's Opinion

Similarly, Judge Crocker properly considered all evidence bearing on Burton's mental health, including Dr. Lima's medical opinion. Once again, the opinion of Dr. Lima, who performed a consultative exam, is not entitled to any special weight in light of § 404.1520c. His opinion must be evaluated for its persuasiveness based on a range of factors, chief among them being supportability and consistency, both of which must have been articulated by the ALJ. *See* 20 C.F.R. § 404.1520c(b)(2); *see also Sallaz*, 2024 WL 2955645, at *5.

Judge Crocker satisfied these requirements. While Dr. Lima stated that Burton could not "complete tasks in a normal amount of time," Judge Crocker correctly noted that Lima failed to define "the extent of these limitations and whether this would affect both simple and complex tasks." DE 5 at 28. Dr. Lima's failure to "offer specific, vocationally relevant limitations in [the opinion] statement that quantify what he considered to be a 'normal amount of time' to complete tasks" was found to be a near fatal flaw in itself, severely limiting the opinion's supportability. *See id.* Moreover, Judge Crocker reasonably concluded that Dr. Lima's failure to address "the claimant's documented anxiety in interacting with others, which appear[ed] to be a defining feature of her symptom complaints in both his examination and other records," amounted to a glaring lacuna. *See id.* Collectively, these facts rendered Dr. Lima's opinion "not fully persuasive." *See id.* at 27. The ALJ's views were reasonable and procedurally sound.

Instead of relying on Dr. Lima's conclusions, Judge Crocker relied on Dr. Weiner and Dr. Guerrero's independent but consistent opinions, believing them to be "generally persuasive."

*See id.*  It was particularly relevant to Judge Crocker's analysis that their assessments aligned with and were supported by the objective findings that Dr. Lima articulated in his evaluation notes.[5] *See id.*  Further, the Court notes Dr. Lima's own finding that Burton "is likely to do well with supervisors and co-workers" and that her "ability to manage stressors typically found at work" was only "moderately reduced."  *Id.* at 386.  To the extent that Judge Crocker *did* rely on or reference Dr. Lima's underlying objective considerations, his determination as to Burton's residual functional capacity was reasonable and sound.

But overall, Judge Crocker's statements indicate that Dr. Lima's opinion lacked supportability and consistency.  Although succinct, his analysis addressed the pertinent factors and was based on substantial evidence; at bare minimum, it included more than the sort of boilerplate references to supportability and consistency that typically result in remand.  *See Zirker v. Comm'r of Soc. Sec.*, No. 21-CV-12440, 2023 WL 2301998, at *3 (E.D. Mich. Mar. 1, 2023) (collecting cases).  This is not de novo review, and Judge Crocker's rational processing passes the threshold.  Accordingly, Judge Crocker's treatment of Dr. Lima's opinion was not in error; rather, it reflected a reasoned evaluation consistent with both the record and the law.  *See* 20 C.F.R. § 404.1520c(b)(2).

### C.  Denial of Summary Judgment

Burton cannot prevail on her motion for summary judgment for the same reasons she cannot prevail on her appeal.  Summary judgment is only appropriate when the record indicates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(a)–(c).  Given that Judge Crocker did not err in his

---

[5] Here, there is an important distinction that must be drawn.  While Judge Crocker was generally dissatisfied with Dr. Lima's conclusions and his failure to limit those conclusions with "specific, vocationally relevant" language, he still credited his *objective* observations, and it was not unreasonable for Dr. Weiner and Dr. Guerrero to rely upon them.  *See* DE 5 at 27–28.

interpretation of the law, and that his opinion was based on substantial evidence, it cannot be said that Burton is entitled to prevail as a matter of law. *See Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2552–53 (1986). Therefore, Burton's motion for summary judgment is denied. Indeed, in this administrative appeal, applying the correct review standard, the Court affirms the Agency's determination on the merits.

## IV.    CONCLUSION

For the above-stated reasons, the Court DENIES Plaintiff's appeal, *see* DE 1, and denies Plaintiff's motion for summary judgment, *see* DE 7. The Court AFFIRMS the SSA's decision, pursuant to 42 U.S.C. § 405(g), and DIRECTS the Clerk to strike this matter from the Court's active docket.

This the 5th day of January, 2026.

Signed By:

**_Robert E. Wier_**

**United States District Judge**

13